ANTHONY SABIA, PROSECUTOR, v. COURT OF COMMON PLEAS IN AND FOR THE COUNTY OF HUDSON, RESPONDENT.

Submitted November 5, 1924—Decided April 21, 1925.

1. A debtor applying for the benefit of the insolvent laws under section 2 of the act for relieving persons imprisoned on civil process (*Comp. Stat., p.* 2824) is entitled to his discharge, unless he has committed a breach of the condition of the bond given by him to the plaintiff.

2. Where an insolvent debtor has given bond to the plaintiff, under section 2 of the statute referred to, he is at liberty to go where he pleases between the time of his release and the day of hearing.

3. The provisions of section 10 of the act relieving persons imprisoned on civil process (*Comp. Stat., p.* 2827) requiring the court, on the hearing of the petition for discharge, to inquire whether the debtor has at any time between day of his application to the court and the time of the hearing been without the prison limits, and if he has to refuse his discharge, has no application to a proceeding instituted by a debtor under section 2 of the act, but solely applies to a debtor, applying for a discharge, who has given a bond on prison limits to the sheriff.

4. Where a petitioning debtor, who has given a bond to the sheriff on prison limits, is refused a discharge, because he has been off such limits between the time of giving such bond and the day of hearing, the statute requires that the proceedings shall be stayed, and hence his petition cannot be properly dismissed.

On *certiorari.*

Before Justices KALISCH, BLACK and CAMPBELL.

For the prosecutor, *J. Victor D'Aloia* (*John O. Bigelow,* of counsel).

For the respondent, *Levitan & Levitan.*

The opinion of the court was delivered by

KALISCH, J. The prosecutor, Sabia, was arrested by virtue of a *capias ad satisfaciendum* by the sheriff of Hudson county, and, while in such custody, applied for the benefit of the in-

solvent laws of this state. He gave a bond to the plaintiff in the action, delivered an inventory of his property, under oath, to the sheriff, and filed his petition, together with an inventory and bond, in the Court of Common Pleas, and was released. Subsequently, the court fixed a day for the hearing on the petition, and it appeared that, though the debtor resided in Hudson county, he had gone outside the territorial limits of Hudson county between the time he filed his petition, inventory and bond and the day of the hearing. The court reserved decision, and, a year after the hearing was had, dismissed the proceedings upon the ground that the prosecutor had gone beyond the prison limits between the time of his release from custody, when he filed his petition, and the day of the hearing.

The condition of the bond was "if the said Anthony Sabia shall appear before the next Court of Common Pleas to be holden in the county aforesaid, and petition the said court for the benefit of the insolvent laws of this state, and shall in all things comply with the requirements of the said insolvent laws, and shall appear in person," &c., the obligation to be void.

The contention on behalf of the defendant is that the action of the trial judge, in refusing to discharge the prosecutor and in dismissing the petition, because he went beyond Hudson county, the prison limits, between the day of his release, when his petition was filed, and the day of the hearing, was sanctioned by the statute relating to insolvent debtors, applying to be discharged from imprisonment.

The law appears to be settled, beyond controversy, that a debtor, applying for the benefit of the insolvent laws under section 2 of the act for the relief of persons imprisoned on civil process (2 *Comp. Stat.*, p. 2824, § 2), is entitled to his discharge, even though he has gone beyond the limits of the county, in which he was arrested or confined, between the time of his release and the day of hearing, unless he has disentitled himself to be discharged by failing to comply with the condition of the bond given by him to the plaintiff. The condition of the bond given by the prosecutor was as follows:

"Now, therefore, if the said Anthony Sabia shall appear before the next Court of Common Pleas to be holden in the county aforesaid, and petition the said court for the benefit of the insolvent laws of this state, and shall in all things comply with the requirements of the insolvent laws, and shall appear in person at every subsequent court until he shall be duly discharged as an insolvent debtor, and if refused a discharge surrender himself immediately to the sheriff or keeper of the jail of said county," &c.

From the record it appears that the prosecutor complied with the conditions of the bond, and this was practically conceded by the trial judge when he determined, as the sole ground for his refusal, to grant the prosecutor's petition, that because it appeared that the prosecutor had gone without the prison limits, he should be denied the relief prayed for.

It is quite manifest that the result arrived at by the court was due to an erroneous application of the provisions of section 10, to proceedings had under section 2 of the act. Section 10 (2 *Comp. Stat.,* p. 2827) *inter alia,* provides that it shall be the duty of the court, at the time of hearing, to examine the debtor touching his confinement, and to inquire "whether he has not, at any time, between the day of his application to the court for his hearing, and the time of his examination, been without the prison limits."

The question as to the applicability of the provision of section 10, above quoted, to proceedings under section 2 of the act, was carefully considered in the case of *In re Moschberger,* reported in 10 *N. J. L. J.* 120, in an opinion by Judge Andrew Kirkpatrick, at that time judge of the Essex Common Pleas Court, who held that section 10 was not applicable to petitions filed under section 2. His thorough research and sound reasoning recommend themselves to the court, to the extent that we adopt his view, as expressed in his opinion, that section 10 has no application to proceedings under section 2 of the insolvent act.

We would be content to close the discussion here were it not that the order of the placements of the provisions of the act for the relief of persons imprisoned on civil process, gen-

erally termed the "Insolvent Debtors' act," was in disregard of their original purport and their normal and logical connection with each other. The sections were culled from various independent acts, especially from the act relating to the practice of law, and were first grouped in the Revision of 1846, where each section, as the law in relation to the subject-matter then stood, had proper relation to each other. But since the Revision of 1846, many statutes were enacted for the relief of insolvent debtors, which legislation was designed to wipe out the hardship still inflicted upon unfortunate debtors who sought their freedom. The subsequent revisions apparently make no discrimination between changes wrought by the modern procedure, prescribed by later statutes concerning insolvent debtors and the old law, and have incorporated section 10, which was formerly section 5, and, properly so, in the Revision of 1846, but which section seems to have lost its proper place through changes effected by later statutes, and thus became section 10 of the Revision of 1877, but, notwithstanding the intermingling of the section with sections of the act which concern applications by insolvent debtors under sections 1 and 2 of the act in the Revision of 1877, it is quite clear that its provision is only compatible with applications made under section 1 of the act, and to it the requirements of the section are solely to be applied—that is, to cases where the debtor has given a bond on the limits to the sheriff.

Section 10 is made subject to the criticism that it is found in its original form, which was congruous with the procedure as it existed in 1846, but is incongruous with a statutory provision later enacted as a section of a statute, which provides for two different remedies, one where an application is made for the benefit of the insolvent laws by a debtor in actual confinement, and who has given a bond to the plaintiff, and, of course, ceases to be in actual confinement, and the other where an applying imprisoned debtor has given bond on the limits to the sheriff, he being thus, to all intents and purposes, in actual confinement, though he has the freedom to walk within the prison limits as fixed by the court. If sec-

tion 10 had in express terms stated that in cases where application was made under section 1, or where a debtor has given bond on the limits, the inquiry as to whether he had gone without the limits would be pertinent, and no confusion could have arisen as to which of the two classes of cases it was applicable.

But this very incongruity above referred to establishes with reasonable certainty the inapplicability of section 10 to proceedings had under section 2 of the Insolvent Debtors' act.

It may, therefore, be fairly asserted, despite the placement of section 10, in the order that it is found in the revision, that this circumstance is of no material significance, since by applying the ordinary legal rules of statutory construction to the situation, by construing all the sections and statutes in *pari materia* together so that each statute or section thereby may be given its proper legal effect, and by taking into consideration the old law, the mischief and the remedy, we arrive at the result that the provision of section 10, as to whether the applying debtor has been off the prison limits, was and can only be applicable to a situation where such applying debtor for the benefit of the insolvent laws has given a bond on the prison limits to the sheriff. An epitomized history of the statute up to the present time may prove useful. By an act passed March 18th, 1795 (*Pat. L., p.* 184), only a person in *actual confinement* for *debt* was entitled to apply for the benefit of the insolvent laws. In a separate act entitled "An act to regulate the practice of the courts of law," passed February 14th, 1799, four years later, by section 100 of the act, it was provided and required that the Inferior Court of Common Pleas of this state should lay out the bounds and rules of the prisons in the several counties, not exceeding "three acres of land adjoining to such prison," which marks and bounds were to be recorded by the clerk of said court, and were subject to be altered and renewed from time to time as occasion required; and it was further provided that every prisoner in *any civil action,* giving bond to the sheriff, with sufficient sureties, being freeholders and residents in the county, in double the sum for which he is

committed, that he will keep within bounds, shall have liberty to walk therein; and if he walk out of the said bounds, the said bond shall be forfeited, and the sheriff, at the request of the plaintiff or his attorney, shall assign," &c. *Pat. L., p.* 365. It is to be noted that the Insolvent Debtors' act was only available to those who were in actual *confinement for a debt,* whereas relief was afforded by virtue of the section to persons imprisoned in *any civil action* to be released on limits, but not to have the benefit of the insolvent laws. In 1809, by an act entitled "A supplement to the act entitled 'An act for the relief of persons imprisoned for debt,' passed the 18th day of March, 1795," it was provided that the act of 1795 above referred to shall extend to all persons in actual confinement for *debt* or *damages. Bloomf. L.* 1800-1811, *p.* 214. In 1818 the several acts and supplements to acts for the relief of persons imprisoned for debt, passed since the 18th day of March, 1795, were repealed, and the act entitled "An act for the relief of persons imprisoned for debt, passed the 18th day of March, 1795, and every part thereof (except as hereafter provided) is hereby revived and declared to be in full force." *Rev.* 1821, *p.* 651. The principal changes made in the act of 1795 was to extend its application to persons "imprisoned either for debt or damages," and to incorporate within it a provision designated as section 5, that if a person who had given a bond to any sheriff or other officer to keep the prison limits, in pursuance of the one hundredth section of the act entitled "An act to regulate the practice of the courts of law," shall voluntarily and intentionally walk or go out of the prison limits, &c., the bond shall be forfeited, &c. Section 100 of the Practice act of 1799, in relation to the extent of the prison limits, remained unchanged. *Rev.* 1821, *p.* 426. In 1822, at a time when it appears that the only bond that a person imprisoned on civil process could give, under the statute, was a bond to the sheriff to keep the prison limits, it was enacted that it shall be the duty of the court, at the time of hearing, to examine the debtor touching his confinement, whether his imprisonment was compulsory or voluntary, and whether he has not,

at any time between the day of his application to the court for his hearing and the time of his examination, been without the prison limits prescribed by law, &c.  *Harr. L. of N. J., p.* 31.  In 1825 the prison limits were extended to eight acres of land adjoining to the prison.  *Harr.* 122.

In 1830 a more humane spirit prevailed toward those who were unfortunate enough to be imprisoned for debt.  As a result the legislature adopted a complete scheme for the relief of insolvent debtors, in the passage of the act entitled "An act abolishing imprisonment for debt in certain cases."  *Harr.* 299.

Section 1 of the act, in substance, provides that a person arrested in *any civil action,* upon giving a bond to the plaintiff in double the sum for which he was arrested, with sufficient security, and shall deliver an inventory under oath of all his property to the officer making the arrest, with a condition in the bond that he will appear before the next Court of Common Pleas of the county, and petition the court for a discharge, &c., shall be discharged from custody.  The second section provides that a person arrested as designated in section 1, and who has given such a bond, shall be entitled to make application for his discharge under the insolvent laws of this state as fully and effectually as if he were actually confined in the common jail of the county.  By the seventh section it is provided that the Court of Common Pleas may, at any time after the passing of the statute, extend the prison limits of the county or borough so as to embrace the whole of the city, town, village or borough in which the prison shall be.  *Harr.* 300, 301.

The legislation reviewed makes it quite clear that where a debtor gave a bond on prison limits and applied for the benefit of the insolvent laws he met the statutory requirement that he must be in actual confinement in order to be eligible to make the application, but under the statute of 1830 actual confinement was no longer a prerequisite to eligibility of an insolvent debtor to make the application, provided such debtor had complied with section 1 of the statute of 1830 by giving bond to the plaintiff, &c.

We now approach a consideration of the Revision of 1846, which followed closely upon the adoption of the constitution of 1844, whereby imprisonment for debt was abolished, except where the same had its inception in fraud. The revisers were the eminent jurists Peter D. Vroom, Henry W. Green, William L. Dayton and Stacy G. Potts. They maintained the two classes of procedure separate and distinct. In chapter 3, under the caption, "An act abolishing imprisonment on civil process in certain cases (Revision), approved April 15th, 1846," page 323, we find that section 2 of the act relates solely to a situation where a debtor, under arrest, has given bond to the plaintiff, and its provision is, in substance, the same as section 2 of the Revision of 1877, page 497, and section 2 of 2 *Comp. Stat., p.* 2624. Then follows chapter 4, under the title, "An act for the relief of persons imprisoned on civil process (Revision), approved April 16th, 1846," page 325, approved a day later than the former act, and there we find that section 1 of the act deals with debtors who are in actual confinement. This statute has twenty-three sections, among which section 5 relates to an examination of a debtor touching his confinement, and whether he has been without the prison limits. Section 23 relates to the establishment by the Court of Common Pleas of the extent of prison limits, and section 24 provides for a forfeiture of the bond given by a debtor on prison limits if he shall voluntarily and intentionally walk beyond such limits as fixed.

The other sections have reference to procedure which is appropriate to an application made by a debtor for the benefit of the insolvent laws under either section 2 of chapter 3 or section 1 of chapter 4, as the case may be. The only observation necessary to be made here is, that section 5 of this act has become section 10 in the Revision of 1877, page 499, and in 2 *Comp, Stat., p.* 2827, its transposition making obscure what was perfectly plain before to those who were familiar with the history of the legislation concerning insolvent debtors:

In the light shed by investigation into the origin and course of the legislation under discussion, it is clear that the

provisions of section 10 were inapplicable to the prosecutor's application for his discharge. It may be well to observe here that if the situation had been such that section 10 was applicable, nevertheless, the trial judge was without power to dismiss the petition, as was done in the present case, for the section expressly provides that in case the debtor has been without the prison limits, it shall be the duty of the court to stay all further proceedings.

For the reasons given the order of the Common Pleas Court is reversed, and the case is remanded to the Common Pleas Court to be proceeded with according to law.